23CA0283 Peo v Harvey 03-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0283
Boulder County District Court No. 17CR1441
Honorable Nancy W. Salomone, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jay Harvey,

Defendant-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE SCHOCK
Freyre and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

---

Philip J. Weiser, Attorney General, Patrick A. Withers, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Joseph T. Goodner, Alternative Defense Counsel, Englewood, Colorado, for
Defendant-Appellant

¶ 1      Defendant, Jay Harvey, appeals the order denying his Crim. P. 35(c) motion for postconviction relief. We affirm.

## I.     Background

¶ 2      Harvey was charged with menacing and attempted second degree assault after a physical altercation with his nephew.

¶ 3      The evidence at trial, consisting of three prosecution witnesses, was presented in one afternoon. After the first witness (the victim), the district court advised Harvey of his right to testify, pursuant to *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984).

¶ 4      Consistent with *Curtis*, the district court advised Harvey that (1) he had the right to testify; (2) no one could stop him from doing so, "not even [his] attorneys"; (3) the prosecution could cross-examine him if he testified; (4) the prosecution would be allowed to ask about any prior felony conviction[1]; and (5) he had the right not to testify, and if he chose to exercise that right, the jury could be instructed that it may not hold his failure to testify against him. *Id.* The court confirmed that Harvey understood each of these rights.

---

[1] The prosecution confirmed that there was no evidence that Harvey had a prior felony conviction.

¶ 5    Harvey then told the court that he "didn't know that [he] had to make that decision at this time whether [he] was going to testify or not."  The court clarified that Harvey did not have to make his final decision until after the prosecution rested its case, explaining:

> The final time you'll have to make [the decision to testify] is after [the district attorney] finishes her case . . . .  After that, when I say, Defense may call your first witness, absent anyone else testifying, if they say we have no witnesses, then you will have forever given up your right to testify.  Do you understand that?

Harvey said he understood.  He also confirmed that no one was "pressuring [him] into making a decision" and that it would be his "own free and voluntary choice whether [to] testify or not."

¶ 6    The court then asked Harvey if he had made his decision yet as to whether he was going to testify.  Harvey responded, "Well, it's my intention to want to.  But, no, we haven't made that decision."  The court reiterated that if the defense did not call him as a witness after the prosecution rested, he would be waiving his right to testify:

> But you understand that once [the district attorney] says, the Prosecution rests, and I say, Defense call your first witness, unless they call you as a witness, you are waiving your right?  Do you understand sir?

Harvey again confirmed he understood.

2

¶ 7    Based on this colloquy, the court found Harvey "freely, voluntarily, knowingly understood his rights and [was] making a free, voluntary choice as to whether to testify or not." It then explained again that Harvey could make his final decision later:

> You'll have some more brief opportunity to discuss this with your attorneys after the Prosecution finishes their case in chief, but before you're asked whether you want to testify or not.

¶ 8    Later that afternoon, after calling two more witnesses, the prosecution rested its case. The court then asked defense counsel if the defense intended to call any witnesses. Defense counsel requested "[o]ne long moment" to speak with Harvey. Although the court offered to excuse the jury, counsel opted instead to speak with Harvey in the courtroom while the jury was present. After that consultation, defense counsel said the defense would rest.

¶ 9    The jury convicted Harvey of menacing but acquitted him of attempted second degree assault. A division of this court affirmed the judgment. *See People v. Harvey*, (Colo. App. No. 18CA1293, Jan. 21, 2021) (not published pursuant to C.A.R. 35(e)).

¶ 10   Harvey filed a pro se Crim. P. 35(c) petition, asserting that his attorneys refused to let him testify at trial despite his strenuous

3

requests to do so. The district court appointed counsel, who filed a supplemental petition. The supplemental petition argued that (1) Harvey did not validly waive his right to testify, and (2) defense counsel was ineffective by overriding Harvey's desire to testify.

¶ 11 The district court held an evidentiary hearing. Harvey testified at the hearing that he had repeatedly told his attorneys it was his "fervent desire" to testify at trial, but his attorneys did not think it was in his best interest. He explained that, after the district court's advisement, he again told his attorneys he wanted to testify, but eventually, he "reluctantly . . . caved" into his attorneys' recommendation not to testify "after talking about it so much."

¶ 12 Harvey's trial counsel testified that, before trial, Harvey was "pretty adamant" that he wanted to testify. But after the district court's *Curtis* advisement, they met with Harvey again about that decision and "felt like [they] walked away from that meeting on the same page that [he] was not going to testify." Trial counsel also testified that, if Harvey had maintained his position in that meeting that he wanted to testify, they would not have rested their case.

¶ 13 The district court denied the motion, finding trial counsel's testimony credible. The court found that (1) Harvey failed to show

his waiver was not voluntary, knowing, and intentional; and (2) his counsel was not ineffective for failing to request an additional *Curtis* advisement because the initial advisement was sufficient.

## II. Waiver of Right to Testify

¶ 14    Harvey contends that the district court erred by finding he knowingly, voluntarily, and intelligently waived his right to testify because (1) he had previously expressed an intent to testify, and (2) the court did not personally ask him whether he was waiving his right to testify before the defense rested.  We disagree.

### A. Applicable Law and Standard of Review

¶ 15    A criminal defendant has the constitutional right to testify. U.S. Const. amend. XIV; Colo. Const. art. II, § 25; *see also Curtis*, 681 P.2d at 509-10.  This right is "so inherently personal and basic that it can only be surrendered by the accused's knowing, voluntary, and intelligent waiver." *Moore v. People*, 2014 CO 8, ¶ 9.

¶ 16    To ensure that a waiver is knowing, voluntary, and intelligent, the district court must advise the defendant on the record of the nature of the right to testify.  *Id.* at ¶ 11.  While that advisement need not "conform to any prescribed litany or formulistic recitation," it should include five elements: (1) the defendant has a right to

5

testify; (2) if the defendant wants to testify, no one can prevent it; (3) if the defendant testifies, the prosecution may cross-examine the defendant; (4) if the defendant has been convicted of a felony, the prosecutor may ask about it and disclose it to the jury, and the jury can be instructed to consider it only as it bears upon credibility; and (5) the defendant has a right not to testify and the jury can be so instructed. *Id.* at ¶¶ 10-11; *see also Curtis*, 681 P.2d at 514.

¶ 17 But the district court need not go beyond the advisement and ask the defendant personally, on the record, if they waive the right to testify. *People v. Davis*, 2018 COA 113, ¶ 43; *see also Roelker v. People*, 804 P.2d 1336, 1338 (Colo. 1991). Instead, "the advisement itself functions as the on-the-record waiver." *Davis*, ¶ 43.

¶ 18 The content of the advisement does not conclusively establish whether or not the defendant's waiver was knowing, voluntary and intelligent. *Moore*, ¶ 24. But when the advisement includes the five required *Curtis* elements, it is evidence that, "if not contested by evidence showing otherwise, stands in support of the validity of the waiver." *Id.* at ¶ 26. To overcome a proper advisement, the defendant must present evidence demonstrating that the waiver was not knowing, voluntary, and intelligent. *Id.* at ¶ 27.

6

¶ 19    The essential task for a court on postconviction review, however, is not simply to assess the adequacy of the advisement but to determine "whether the defendant's waiver of the fundamental constitutional right to testify was knowing, voluntary, and intelligent." *Id.* at ¶ 22. This inquiry turns on "whether the defendant was aware that he had a right to testify, whether the defendant knew of the consequences of testifying, and whether the defendant understood that he could testify notwithstanding the contrary advice of counsel." *Id.* at ¶ 14 (citation omitted).

¶ 20    We review de novo whether a waiver was knowing, voluntary, and intelligent. *Davis*, ¶ 35. But we defer to the district court's findings of fact. *Id.* A district court's determination that a defendant effectively waived the right to testify will therefore be upheld if it has record support. *See Roelker*, 804 P.2d at 1339.

### B.    Analysis

¶ 21    As Harvey acknowledges, the district court gave him a proper *Curtis* advisement. That advisement included the five necessary components. *See Moore*, ¶ 11; *Curtis*, 681 P.2d at 514. The district court confirmed that Harvey understood each of these rights, including that "if [defense counsel] say [they] have no witnesses,

7

then you will have forever given up your right to testify." Harvey also confirmed that no one was pressuring him and that his decision whether to testify would be his "own free and voluntary choice." This advisement is evidence that, standing alone, indicates that Harvey's waiver — which took effect when the defense said it rested — was knowing, voluntary, and intelligent. *Moore*, ¶ 26; *see also Tyler v. People*, 847 P.2d 140, 143 (Colo. 1993) (holding that prosecution established a prima facie waiver where defendant "was advised of his right to testify, chose to remain silent when his defense counsel rested, and never expressed a desire to testify").

¶ 22     To rebut that evidence, Harvey had to present evidence demonstrating that the waiver was *not* knowing, voluntary, and intelligent. *See Moore*, ¶ 27. He contends that he did so by telling the district court at the time of the advisement that it was his "intention to want to" testify and then explaining at the Rule 35(c) hearing that he had consistently expressed a desire to testify. But Harvey's statement to the district court at the time of the advisement was expressly tentative, couched with "we haven't made that decision." And even at the Rule 35(c) hearing, Harvey acknowledged that, although he wanted to testify, he ultimately

relented and agreed not to after discussing the issue extensively with his attorneys. Nothing in the record indicates that, by the time that final decision was made, it was anything other than Harvey's "own free and voluntary choice," as he told the court it would be.

¶ 23 Nor do trial counsel's efforts to persuade Harvey not to testify undermine this conclusion. The district court found counsel's testimony regarding these discussions credible. That testimony established that (1) Harvey told counsel before trial that he wanted to testify; (2) counsel consistently recommended otherwise; (3) by the time the prosecution closed its case, counsel believed Harvey was "on the same page" about not testifying; and (4) they would not have rested their case if Harvey had told them he wanted to testify.

¶ 24 Harvey's decision not to testify is not involuntary simply because it was brought about by counsel's strong advice. *See Davis*, ¶ 44 (concluding that waiver was valid where trial counsel testified that "he would do his 'very best' to dissuade clients from testifying if he did not think it was in their best interests" but that "he would not prevent clients from taking the stand if they chose to do so"); *People v. Hardin*, 2016 COA 175, ¶ 43 (concluding that waiver was valid where trial counsel "strongly advised [the

defendant] against testifying" but "did not 'intimidate' [him] or otherwise improperly interfere with his ability to choose whether to testify"); *People v. Starkweather*, 159 P.3d 665, 668 (Colo. App. 2006) ("Standing alone, competent advice by counsel, albeit stated in strong language, does not constitute coercion.").

¶ 25     We also reject Harvey's contention that the district court's failure to ask Harvey himself — instead of his counsel — whether he wished to testify made his waiver invalid. Although Harvey acknowledges that an express waiver is generally not required, *see Tyler*, 847 P.2d at 143; *Roelker*, 804 P.2d at 1339, he maintains that the district court told him it would ask him again whether he wanted to testify and was required to adhere to that procedure. He asserts that the court violated this procedure by not giving him the opportunity it said he would have to make a final decision.

¶ 26     But the district court never said it would ask Harvey personally whether he wanted to testify; it said only that Harvey would be asked. And he was. When the prosecution rested, the court asked Harvey's counsel whether they wished to call any witnesses, and it allowed them time to speak with Harvey before answering. Harvey thus had the chance to make a final decision,

just as the court said he would. And as Harvey acknowledged at the Rule 35(c) hearing, he chose not to testify. This record supports the district court's finding that the ultimate decision was Harvey's alone, even if that decision was communicated by counsel.

¶ 27 Moreover, the district court unequivocally explained to Harvey at the time of the advisement how the waiver would operate: (1) the prosecution would rest; (2) the court would ask the defense if it wanted to call any witnesses; and (3) if the defense said no, Harvey was waiving his right to testify. Harvey twice confirmed that he understood. The record therefore supports the district court's finding that Harvey knew he was waiving his right to testify when he allowed his attorneys to tell the court the defense rested.

¶ 28 We acknowledge that although the advisement occurred outside the presence of the jury, the ultimate decision to waive the right to testify was made while the jury was present. *Cf. People v. Drake*, 748 P.2d 1237, 1250 (Colo. 1988) ("strongly caution[ing] that [a *Curtis*] advisement should be conducted outside the presence of the jury"). And Harvey testified at the Crim. P. 35(c) hearing that he went along with the decision not to testify in part because he was "worried about making a scene in front of the jury." But the jury

was dismissed immediately after the defense rested, and Harvey did not at that point give any indication that he was not on board with the decision. While it is true that the waiver had by then already occurred, Harvey's subsequent silence on the matter after the jury was dismissed further supports the district court's finding that he had agreed with that decision and understood its consequences.

¶ 29    Harvey contends that *People v. Janis*, 2018 CO 89, supports his argument by contrast. In *Janis*, the supreme court concluded that the defendant knowingly, intelligently, and voluntarily waived her right to be present when she "asked through trial counsel to leave the courtroom during the victim's testimony." *Janis*, ¶¶ 1, 4. Harvey argues that the waiver in this case falls short of the one in *Janis* for several reasons. But nothing in *Janis* — which addressed a different constitutional right — suggests, contrary to *Tyler*, *Roelker*, and *Davis*, that an express on-the-record waiver is required. Indeed, to the extent *Janis* offers any guidance in this case at all, it confirms that a valid waiver may be shown "through the statements of counsel and circumstantial evidence," so long as the waiver is knowing, voluntary, and intelligent. *Id.* at ¶ 26.

¶ 30    The district court did not err by finding that Harvey's waiver of the right to testify was knowing, voluntary, and intelligent.

### III.    Ineffective Assistance of Counsel

¶ 31    Harvey also contends that his counsel was ineffective for failing to request an express waiver of Harvey's right to testify. We agree with the district court that this claim fails for similar reasons.

¶ 32    To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Under the first prong, the defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Under the second prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶ 33    Harvey's counsel's failure to request an express waiver was not deficient performance for two reasons. First, as noted above, an express waiver is not required. *See Tyler*, 847 P.2d at 143; *Roelker*, 804 P.2d at 1339; *Davis*, ¶ 44. So it is not inherently unreasonable

13

for counsel not to request one. Second, the district court found that, based on their discussion with Harvey after the prosecution rested, Harvey's counsel understood that Harvey was "on the same page" with them about not testifying. Having just confirmed with Harvey that he agreed not to testify, it was not objectively unreasonable for counsel not to ask the district court to ask Harvey the same thing. While doing so might have created a better record and obviated the need for this Rule 35(c) proceeding, the record gives no reason to conclude that such a procedure was necessary to ensure that Harvey's decision — which had already been expressed privately to counsel — was knowing, voluntary, and intelligent.

## IV. Disposition

¶ 34    The order is affirmed.

JUDGE FREYRE and JUDGE SULLIVAN concur.