## COMMONWEALTH *vs.* VICTOR M. LOPEZ.

Hampshire. April 9, 2008. - June 11, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Search and Seizure,* Threshold police inquiry. *Threshold Police Inquiry. Constitutional Law,* Search and seizure, Investigatory stop. *Practice, Criminal,* Motion to suppress. *Controlled Substances.*

A District Court judge erred in granting the criminal defendant's motion to suppress evidence of cocaine obtained by police when the defendant dropped it near his bicycle as he approached two police officers upon request, where the officers had not seized the defendant at the time they obtained the cocaine, in that the first police officer's question to the defendant, asking whether the officer could speak with him, was not an order, and the circumstances of the encounter were not sufficiently intimidating that a reasonable person in the defendant's position would have felt compelled to stop and speak with the officer. [609-614]

COMPLAINT received and sworn to in the Eastern Hampshire Division of the District Court Department on May 19, 2006.

A pretrial motion to suppress evidence was heard by *Nancy Dusek-Gomez,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the case was reported by him to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Judith Ellen Pietras,* Assistant District Attorney, for the Commonwealth.

*Michael J. Fellows* for the defendant.

SPINA, J. A judge in the District Court Department allowed the defendant's motion to suppress evidence, specifically, two packets that contained "crack" cocaine, where the judge concluded that police had obtained that evidence as a result of an unlawful stop. A single justice of this court allowed the Commonwealth to pursue an interlocutory appeal to the Appeals

Court, and in an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court affirmed the order to suppress. *Commonwealth* v. *Lopez,* 70 Mass. App. Ct. 1106 (2007). We granted the Commonwealth's application for further appellate review. We now vacate the order and direct that the motion to suppress be denied.

*Background.* On May 19, 2006, at 2 A.M., the defendant was riding a bicycle over a bridge from Holyoke into South Hadley. In full uniform and a marked cruiser, Sergeant David Strycharz followed the defendant onto Main Street. He stopped the cruiser, and motioning at the defendant to come to him, he asked, "Can I speak with you?" In her marked cruiser, Officer Trudy Romanovich pulled up behind Strycharz. Fully uniformed, Romanovich stepped out of her cruiser and approached the defendant. There is no evidence that the officers physically blocked the defendant from leaving. The defendant placed his bicycle on the sidewalk and walked to Strycharz. Romanovich observed that the defendant had dropped something near his bicycle. She approached and found two clear packets containing a white substance later determined to be crack cocaine. After finding the packets, the officers placed the defendant under arrest.

Charged with possession of a class B drug, the defendant moved to suppress the packets containing drugs as fruits of an unlawful seizure. In her order on the motion to suppress, the judge found that "[the defendant] filed an affidavit in support of this Motion stating that: 'I did not feel free to disobey the order and continue riding' "; and also she found that "there was a show of authority by the . . . police officers when they followed [the defendant] in two cruisers and ordered him to stop and speak to them." The judge wrote, in addition, that "the cyclist was halt[ed] in his route. He had to dismount to approach the officers. At this point, the stop began. There was no lawful reason for the stop . . . ." The judge suppressed the packets containing crack cocaine as fruits of an unlawful seizure.

*Discussion.* The defendant argues that the judge was correct when she found that the police officers "ordered" him to stop, a fact that, if true, would help to establish that the officers had seized him. See *Commonwealth* v. *Barros,* 435 Mass. 171, 174

(2001). The Commonwealth argues that the officers did not order the defendant to stop.

"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [her] ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott,* 440 Mass. 642, 646 (2004), quoting *Commonwealth* v. *Jimenez,* 438 Mass. 213, 218 (2002).

In the present case, Sergeant Strycharz testified at the motion hearing that he motioned at the defendant to come to him and asked the defendant, "Can I speak with you?" The judge credited this testimony in her findings of fact. Although she concluded, in addition, that the officers "ordered" the defendant to stop, there was no testimony that the officers made any statements in addition to "Can I speak with you?" before the defendant approached Strycharz. Furthermore, Strycharz testified that he did not say anything other than this initial question as the defendant approached him, and the judge said that there was no dispute as to the facts in this case. Finally, neither the defendant nor the Commonwealth contends in their briefs that the police officers made any statements in addition to "Can I speak with you?" Instead, they both argue whether Strycharz's question should be considered an order on account of the circumstances in which it was asked.

We must consider, then, whether this question was an order. The defendant argues that an order may take the form of a question. A question, however, is typically not an order. A question is an inquiry; an order is a command. A question requests an answer, while an order demands obedience. To recognize that questions and orders are different creatures is not, of course, to ignore the fact that circumstances of an encounter with police may be sufficiently intimidating that a reasonable person would feel compelled to respond to a police officer's question as he believes the officer would wish him to. See *Commonwealth* v. *Fraser,* 410 Mass. 541, 544 (1991). We therefore conclude that the officer did not issue an order, but we nevertheless consider whether the circumstances here were sufficiently intimidating that a reasonable person in the defendant's position would have felt compelled to stop and speak with Strycharz when he asked whe-

ther he could speak with the defendant. Stated somewhat differently, we consider now whether the officers objectively made a show of authority sufficient to create a seizure even though, contrary to the judge's determinations, Strycharz did not "order" the defendant to stop and speak with them.

A person has been seized by a police officer "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985), quoting *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980). "[N]ot every encounter between a law enforcement official and a member of the public constitutes an intrusion of constitutional dimensions requiring justification." *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996). "[T]he police do not effect a seizure merely by asking questions unless the circumstances of the encounter are sufficiently intimidating that a reasonable person would believe he was not free to turn his back on his interrogator and walk away." *Commonwealth* v. *Fraser, supra.* "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 388 n.7, cert. denied, 515 U.S. 1146 (1995), quoting *Terry* v. *Ohio*, 392 U.S. 1, 19 n.16 (1968). While a determination whether police have effected a seizure is necessarily based on the specific facts of the case, *Commonwealth* v. *Sykes*, 449 Mass. 308, 311 (2007), we make that determination guided by the principles and holdings set forth in previous cases similar to the one presently before us.

In *Commonwealth* v. *Barros*, 435 Mass. 171, 172-173 (2001), an officer in full uniform drove his marked cruiser alongside the defendant. The officer then called out to him from his cruiser and said, "Hey you . . . I want to speak with you," an address, it should be noted, more aggressive and demanding than the question posed to the defendant in this case by Strycharz. *Id.* at 172. We concluded that the officer had not effected a seizure at this point in his encounter with the defendant. *Id.* at 174. Given the fact that the officer in the *Barros* case was in full uniform, was in a marked cruiser, drove alongside the defendant, and addressed the defendant with more aggressive words than Stry-

charz did, a reasonable person in the *Barros* case very well might have felt less free to leave than a reasonable person in the situation of the defendant in this case. We nevertheless determined that the officer in that case had not seized the defendant at that point.[1]

Similarly, in *Commonwealth* v. *DePeiza*, 449 Mass. 367 (2007), the defendant was walking alone shortly past midnight. Two officers approached him in their vehicle and called out to him. *Id.* At some point as they spoke with the defendant, the police officers stepped out from their car. *Id.* at 369. We held that the officers' actions at this point had not amounted to a seizure because their tone was not aggressive, they did not block the defendant's path, they did not order the defendant to stop or answer their questions, and their subjective intent could have no impact on whether the defendant felt free to leave. *Id.* at 370. Our reason for concluding that the officers' actions did not amount to a seizure in the *DePeiza* case applies to this case as well. There is no evidence that Strycharz's tone was aggressive, that either officer physically blocked the defendant from leaving, or that the officers issued any orders or commands to the defendant, who, like the defendant in the *DePeiza* case, was approached by two police officers while he was on the street alone late at night. The police officers did not seize the defendant until they obtained the drugs and placed him under arrest.

Likewise, in *Commonwealth* v. *Rock*, 429 Mass. 609, 610-611 (1999), two officers in an unmarked cruiser followed the defendant and a codefendant for 150 feet while they ran down the street at night.[2] When the defendants stopped

---

[1] The police officer in *Commonwealth* v. *Barros*, 435 Mass. 171, 174-176 (2001), seized the defendant only after he continued to walk away from the officer and the officer stepped out of his cruiser, pursued the defendant, and, with two other officers then present, issued him a command: "Hey you. I wanna talk to you. Come here." In the present case, by contrast, Strycharz did not repeatedly attempt to engage a person who initially rebuffed his request to talk. He did not pursue the defendant. He gave no commands. Rather, he asked the defendant once if he could talk with him. The defendant agreed and approached.

[2] The defendant argues that a reasonable person would not have felt free to leave because police officers followed him in two marked cruisers. Police pursuit of a fleeing suspect may constitute a seizure where he plainly is the object of an official assertion of authority that does not intend to be denied. See *Commonwealth* v. *Stoute*, 422 Mass. 782, 789-790 (1996). However, the

running,[3] one officer stepped out of the car, identified himself, and asked the defendants, "Guys, can I talk to you for a second?" *Id.* at 611. A second officer stepped between the two defendants. *Id.* We held that the officers had not seized the defendants at this point. *Id.* at 611-612. In the present case, two police officers followed the defendant in their marked cruisers; the officers emerged from their vehicles; one of them asked the defendant whether he could speak with him; and the defendant agreed to stop and talk. Consistent with the *Rock* case, we conclude that the officers had not seized the defendant when Strycharz asked to speak with the defendant.

Finally, in *Commonwealth* v. *Gunther G.*, 45 Mass. App. Ct. 116, 117 (1998), a case with facts remarkably similar to those in this case, a police officer in his marked cruiser saw three males at around 12:30 A.M. *Id.* He stopped his cruiser, got out, and asked the three males to come over and talk with him. *Id.* Two of them approached, but the defendant began backing away.

---

fact that police follow a person does not necessarily constitute a seizure. See *Commonwealth* v. *Sykes*, 449 Mass. 308, 313 (2007) (no seizure where officers driving alongside defendant on bicycle asked defendant to speak with them, defendant sped up, and officers continued to follow defendant); *Commonwealth* v. *Barros, supra* at 172, 174 (no seizure where officer drove his marked cruiser alongside defendant and called out, "I want to speak with you"); *Commonwealth* v. *Rock*, 429 Mass. 609, 611 (1999) (no seizure where officers in unmarked cruiser followed defendants while defendants ran down street). In the present case, the officer followed the defendant but did not order him, block him from leaving, activate the cruiser's blue lights, or pursue him after he rebuffed a request to talk. Contrast *Commonwealth* v. *Barros, supra* at 172-175 (pursuing and ordering); *Commonwealth* v. *Smigliano*, 427 Mass. 490, 492 (1998) (activating blue lights); *Commonwealth* v. *Helme*, 399 Mass. 298, 300 (1987) (blocking defendant). We cannot conclude that the defendant plainly was the object of an official assertion of authority that did not intend to be denied. Although officers followed him, they did not "pursue" him so as to seize him in the constitutional sense.

[3]The defendant argues that the fact that he stopped riding his bicycle supports the conclusion that a reasonable person would not have felt free to leave. See *Commonwealth* v. *Barros, supra* at 173-174. As common sense, however, and the *Rock* case indicate, the fact that a person chooses to stop and talk when requested to do so does not indicate that a reasonable person in that situation necessarily would have felt unable to leave. See *Commonwealth* v. *Rock, supra* at 610-612. See also *Commonwealth* v. *DePeiza*, 449 Mass. 367, 368-370 (2007). The fact that the defendant stopped is just one of many factors for the court to consider and is certainly not the determinative factor. The judge erred to the extent that she may have concluded that the defendant "was halt[ed]" on account of an order or physical blocking by the officers.

*Id.* A second officer arrived on the scene, and the first officer walked toward the defendant. *Id.* The first officer again asked the defendant to talk with him, but the defendant ran away when the officer was within about ten feet of him. *Id.* The court held that the officers at this point had effected no seizure. *Id.* at 117-118.

In numerous cases with facts similar to those presently before us, we consistently have held no seizure was effected by a request to speak with a citizen. We reach the same conclusion here. The officers had not seized the defendant at the time they obtained the drugs. It was therefore improper for the judge to suppress those drugs as the result of an unlawful seizure.[4] The motion judge's order to suppress is vacated, and we remand this case for the entry of an order denying the motion to suppress.

*So ordered.*

---

[4]Because we hold that the suppression order was improper on these grounds, we need not consider whether the order also was improper on other grounds raised by the Commonwealth.